## SMITH v. STATE.

No. A-11300. May 2, 1951.

(231 P. 2d 371.)

Emmett A. Klem, Shattuck, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Robert K. Smith, was charged in the district court of Ellis county with the crime of maintaining a public gambling nuisance; was tried, convicted, and pursuant to the verdict of the jury was sentenced to pay a fine of $500; and has appealed.

The principal contention presented on behalf of defendant is that the evidence was insufficient to support the conviction.

This prosecution was instituted pursuant to the provisions of 21 O. S. 1941 § 946, which provides:

"Any house, room or place where any of the games prohibited by Section 1 of this Act are opened, conducted or carried on, or where persons congregate to play at any such games is a public nuisance and the keepers and managers of any such nuisance, * * * shall be guilty of a felony and upon conviction, shall

be punished by a fine of not less than five hundred dollars nor more than ten thousand dollars or by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

Section 1 mentioned in said act is now 21 O. S. 1941 § 941, and this statute lists the prohibited games as follows:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or per centage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than five hundred dollars, nor more than two thousand dollars, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

At the close of the evidence of the state the defendant interposed a demurrer to the evidence, and a motion for an instructed verdict of not guilty, which were overruled. The defendant then rested his case without offering any evidence. Several witnesses testified for the state. Their evidence showed that the defendant owned a two room building on a car lot in the business section of the town of Arnett, where people congregated for the purpose of shooting dice and playing poker and other gambling games. The witnesses in testifying referred to the defendant's place as "Bob's place". Most of the evidence referred to gambling that was done in this two room building during the Christmas holidays in the year 1948. The only witness who testified directly that he paid the defendant any money for the privilege of playing the games was Herman Estrada, who had come to the Arnett community with his family for the purpose of picking cotton. Estrada testified that on Wednesday before Christmas he went to Bob's place and lost $10 in a dice game; that the defendant was the operator of the game and charged each of the players 25 cents to play; that he saw some other men gambling with cards at another table.

Paul Gray testified that he was in defendant's place of business about December 12th with one Charlie Beam and that they engaged in a dice game for money; that the defendant and three or four other people were present while the dice game was in progress; that he also saw some gambling at cards; that he visited the place at various times but never lost more than two or three dollars at any one time. The defendant did not charge him anything for playing games, but on one occasion he paid 15 cents as his share towards buying a new deck of cards.

Lee Seward testified that he was in defendant's place on Christmas or the day before and there were about ten persons in there at that time gambling; that on two or three other occasions he had seen dice games going on and saw money pass between the players.

Buck Shahan testified that he was in the defendant's place sometime before Christmas and there were others present, and that they all rolled dice for money.

There were many other witnesses who testified substantially to the same state of facts, including Floyd Thompson, Leroy Andings, Guy Pratt, Walter Halbert, and Henry Helms.

Mr. R. Cromwell, the city marshal of Arnett, testified that he had passed Bob's place on numerous occasions and could hear loud talking, and that one time he looked in the window and saw some men shooting dice, and heard Red Seward say that he had just $8 to lose, and he heard the defendant say he bet

$5 and passed. On cross-examination he testified that he had had many complaints from citizens of Arnett concerning the gambling that was going on at the defendant's place. He further testified that on the inside of defendant's building tacked to the wall was a board which named the games that could be played and the price.

We think this evidence was sufficient to establish that the gambling games defined by the statute hereinabove quoted were being played in the place which was under the management and control of defendant, and that the defendant permitted many persons to congregate in this building for the purpose of shooting dice and playing various card games for money, including poker and pitch. Miller v. State, 74 Okla. Cr. 104, 123 P. 2d 699, and Roedl v. State, 76 Okla. Cr. 1, 133 P. 2d 558, relied upon by defendant, involved prosecutions for maintaining a public nuisance under the misdemeanor statute. 21 O. S. 1941 § 1191. The facts in those cases are not comparable to the facts herein involved and those decisions do not affect the question here presented. The evidence was sufficient to show that the gambling had reached such proportions that it had become a public nuisance in the town of Arnett; that it was being openly carried on in the main part of the business section of town.

The next assignments of error are directed at the court's instructions, and it is contended that the court erred in giving instructions 3 and 4 which provide:

Instruction No. 3:

"You are instructed that any house, room or place where any of the games of either poker, roulette, craps or any banking or per centage, or any gambling game played with dice, cards or any device, for money, checks or credits, are opened, conducted or carried on, or where persons congregate to play at any such games is a public nuisance and the keepers and managers of any such nuisance, and persons aiding or assisting any such keepers or managers in keeping or managing any such nuisance shall be guilty of a felony and upon conviction, shall be punished by a fine of not less than five hundred dollars nor more than ten thousand dollars or by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

Instruction No. 4:

"You are instructed that if you find and believe from the evidence, facts and circumstances, in this case, beyond a reasonable doubt that the defendant did, in Ellis County, State of Oklahoma, on or about the 25th day of December, 1948, or at any time within a period of three years, immediately preceding said date, unlawfully and wilfully manage and conduct a building and place in the town of Arnett, Oklahoma, where persons congregated and played games with dice and cards for money, then you should return a verdict finding the defendant guilty as charged in the information.

"If you do not so find and believe from the evidence, facts and circumstances, in this case, beyond a reasonable doubt then you should return a verdict finding the defendant not guilty."

Instruction No. 3 is in the language of the statute. The defendant contends that the court should have more specifically defined the term "public nuisance" and that its failure to do so was prejudicial to the defendant because it left too much to the conjecture of the jury. There were no requested instructions, and if counsel for defendant had been of the opinion that the instructions as given were not complete it was their duty to call the matter to the court's attention by requesting that the instructions be made more specific or comprehensive, and where they fail to do this our court has adopted the rule that a conviction will not be reversed unless the court is of the opinion in the light of the entire record that the defendant was prejudiced by reason of the instructions that were given. Drake v. State, 91 Okla. Cr. 142, 217 P. 2d 191.

· This court can perceive that the instructions as given virtually amounted to a direction to the jury to find the defendant guilty. However, that was because the evidence of guilt was overwhelming and undisputed. Under the evidence before the court and the law plainly stated in the statute hereinabove quoted, the court had no alternative than to give the instructions which were given, and, as hereinabove pointed out, if the defendant had been dissatisfied with the instructions given it was his duty to request additional instructions.

It was apparent that the guilt of the defendant was plain, but the defendant preferred that the jurors assess the punishment rather than to enter a plea of guilty and to allow the court to assess the punishment. The proof of the state made out a case of maintaining a public nuisance as prohibited by the statute. There was no evidence offered in behalf of the defendant. The punishment meted out to the defendant was the minimum authorized by law, and there is no substantial merit to any of the propositions presented on appeal.

The judgment and sentence of the district court of Ellis county is affirmed.

BRETT, P. J., and POWELL, J., concur.